State v. Guerringer.

---

# THE STATE v. VIC GUERRINGER, Appellant.

**In Banc, June 29, 1915.**

1. **MOTION FOR NEW TRIAL: No Opportunity to File: Due Process of Law.** If a convicted defendant had no opportunity to file a motion for a new trial, owing to the expiration of the term immediately upon the return of the verdict, it would be to deny to him his constitutional rights to due process of law

and equal protection of the laws, to deny him an appeal on the sole ground that his motion was not filed during the term.

2. ———: **Adjournment Fifteen Minutes After Verdict: Fair Trial.** Where the term lapsed by statutory limitations in fifteen minutes after a verdict of guilty was brought in at 11:45 Saturday night, and for that reason no motion for a new trial could be filed during the term, a new trial ought to be awarded on the ground that defendant is entitled to a fair trial.

3. ———: ———: ———: **Act of 1913.** And force is added to this view by the fact that if the Act of 1913, Laws 1913, pp. 217 and 218, passed with an emergency clause twenty-one days before the jury brought in their midnight verdict on the last day of the term, had been followed by the court, the existing statute (Sec. 5285, R. S. 1909) would not have operated to deny him the opportunity to file his motion in time.

4. **RAPE: Unfair Trial.** However beastly and indecent the evidence may show defendant to be, he is nevertheless entitled to a fair trial; and that means that testimony of *res inter alios acta* and arguments by counsel to the jury entirely outside the record should not be allowed.

5. ———: **Sodomy.** Rape is a capital offense, but sodomy upon a woman is not.

Appeal from Jackson Criminal Court.—*Hon. Ralph S. Latshaw*, Judge.

REVERSED AND REMANDED.

*Lloyd Martz* and *Handy & Swearingen* for appellant.

(1) The court erred in overruling defendant's motion for new trial. State v. Dalton, 106 Mo. 468; State v. Wellman, 253 Mo. 312; State v. Brown, 206 Mo. 502. (2) Error was committed by the prosecuting attorney and his assistant in their argument to the jury which was highly improper and prejudicial to the rights of defendant. State v. Spivey, 191 Mo. 112; State v. Wellman, 253 Mo. 319; State v. Hess, 240 Mo. 160; State v. Baker, 246 Mo. 376.

*John T. Barker*, Attorney-General, and *W. T. Rutherford*, Assistant Attorney-General, for the State.

(1)  The time within which a motion for a new trial may be filed in mandatory.  Secs. 5234, 2025, R. S. 1909; State v. Brooks, 92 Mo. 542; State v. Dusenberry, 112 Mo. 277; State v. Maddox, 153 Mo. 471; State v. Arnold, 54 Mo. App. 660; Brooks v. State, 124 U. S. 394; State v. Hunt, 141 Mo. 626; State v. Thomas, 232 Mo. 216; State v. Brown, 206 Mo. 501; State v. Fawcett, 212 Mo. 729.  (2)  Motion for a new trial must be filed before the end of the term at which the verdict was rendered. Secs. 2025, 5285, R. S. 1909; State v. Fawcett, 212 Mo. 729; Haney v. Heirs, 18 Mo. 467; Dauforth v. Lowe, 53 Mo. 217; Childs v. Railroad, 117 Mo. 414; State ex rel. v. Harper, 56 Mo. App. 611; Orvis v. Elliott, 65 Mo. App. 96; Hecht v. Hieman, 81 Mo. App. 370; Maloney v. Railroad, 122 Mo. 106; State v. Riley, 228 Mo. 431.  (3)  It must appear from the record proper that the motion for a new trial was timely filed.  Flanagan Mill Co. v. St. Louis, 222 Mo. 308; Pennowfsky v. Coerver, 205 Mo. 136; Harding v. Bedall, 202 Mo. 631; Keaton v. Weber, 233 Mo. 693; State v Scobee, 255 Mo. 272.  (4)  A record of conviction cannot be reviewed in the absence of a motion for a new trial.  State v. Burdett, 145 Mo. 674; State v. Maddox, 153 Mo. 471; State v. Kimmons, 124 Mo. App. 498; Taylor v. Brotherhood R. T., 106 Mo. App. 212; Strauss v. St. Louis T. Co., 102 Mo. App. 644; State v. Roberts, 219 Mo. 720; State v. Fraser, 220 Mo. 34.  (5)  A motion for a new trial filed within four days after verdict rendered and in term time but after judgment entered without exception, only the record proper is reviewable on appeal.  State v. Riley, 228 Mo. 431; State v. Kile, 231 Mo. 59; State v. Standley, 232 Mo. 23; State v. Clinkenbeard, 232 Mo. 539.  (6)  The court is without jurisdiction to pass upon a motion for a new trial filed out of time.  State v. Brown, 206 Mo. 501; State v. Fawcett, 212 Mo. 729.  (7)  Errors committed in the trial of a case are not reviewable on appeal unless called to the attention of the court in a motion for a new trial.

State v. Knowles, 184 Mo. 141; State v. Miles, 199 Mo. 530; State v. Yandell, 201 Mo. 646; State v. Stark, 202 Mo. 210; State v. Smith, 203 Mo. 695; State v. Brannan, 206 Mo. 636; State v. Harris, 245 Mo. 445; State v. Chissell, 345 Mo. 549. (8) Courts will take judicial notice of the beginning of a term of court but not its ending. State v. Bodall, 202 Mo. 625; Walker v. Fritz, 166 Mo. App. 318. (9) The terms of the criminal court of Jackson county in Kansas City shall begin on the first Mondays of January, April and September. Sec. 4214, R. S. 1909. (10) Under the common law as adopted in Missouri there was no appeal or writ of error by right, and where an appeal exists it is purely statutory and must be strictly complied with. Sec. 8047, R. S. 1909; Bishop's New Crim. Prac., sec. 1352; State v. Thayer, 158 Mo. 53; State v. Merich, 245 Mo. 548; State v. Virron, 164 Mo. App. 212; State v. Short, 250 Mo. 331.

FARIS, J.—Defendant, convicted in division one of the criminal court of Jackson county of rape and his punishment fixed at death, has appealed. He was jointly charged with Oscar Harrison and others, but a severance was granted to the several co-indictees, and they were separately tried.

The case of Oscar Harrison came to this court on appeal, as did likewise the case of one Maurice Lewkowitz, who it seems was separately indicted, but who was present at the identical time, act and place, taking part in all of the matters and things which it is charged defendant participated in. The facts of the alleged rape as the evidence shows them to be, are unutterably bestial and indecent. They are set forth in full in the case of State v. Harrison, 263 Mo. 642, and in the case of State v. Lewkowitz, 265 Mo. 613. The student of criminology and of the law and the morbidly curious may read them there. They have no necessary place

here in the view we take of this case and we need not cumber the books more with their abysmally filthy and disgusting details.

The trial began on March 31, 1914, which seems to have fallen upon a Tuesday. It continued on trial for five days. When the usual adjourning hour came on Saturday afternoon, April 4, it was not yet finished. A night session was held and the case went to the jury, it would appear, late Saturday night. The jury came in with their verdict at the hour of 11:45 p. m. of said Saturday night, which was the last juridical day of the January term, 1914; for by statute the April term began on Monday, April 6, 1914. The learned trial judge received the verdict when it came in. Whether he adjourned court then at once, or merely quit till Monday, the record does not show; but the record does show that he opened his division of the criminal court on Monday, April 6, 1914, in the April term, which term we judicially notice began on that day. The motion for a new trial herein was filed on April 9, 1914, but the court nevertheless considered it and it was treated in all procedural ways and manners as if the entire case had been in fact tried at the April term, 1914, instead of at the January term, 1914, as the fact was.

Was this motion untimely filed so as to preclude our review? If it was and without fault of defendant, is he for that entitled to a new trial? These are the points now vexing us. To their further elaboration and consideration the below brief discussion will be devoted.

## OPINION.

I. Upon the threshold we are met by the above forecasted and most serious contention on the part of the State. This is, to-wit, that since the motion for

**Motion for New Trial.** a new trial was not filed till four days after the end of the term at which the case was tried and the verdict rendered, we cannot consider such motion for any purpose. And since if the motion for a new trial and the exceptions saved to the overruling thereof are out of the case all of the matters and things set forth in the bill of exceptions are likewise out of it, and we are relegated for error to the record proper only. There seems to be no error in the record proper. If then the State is right in this contention, there is no question but we must affirm the case.

There is no dispute (but on the contrary it is admitted) that the jury came in with their verdict fifteen minutes before midnight, to-wit, at the hour of 11:45 p. m., of Saturday, April 4, 1914; the same being the last fifteen minutes of the last hour of the last day of the January term of the criminal court of Jackson county. There was then left by statutory limitation but fifteen minutes of secular time—for we exclude the Sabbath, which is *dies non*—till the end of the January term and the beginning of the April term of said court. [Sec. 4214, R. S. 1909.] Views of sane men who know any law at all will not differ as to the fact that fifteen minutes is not sufficient time within which to prepare and file a motion for a new trial in a case which it took five days to try and wherein the record consists of 737 pages. Even in the face of such a hardship as this does the statute when viewed in the light of the history of its enaction and amendment, allow a motion for a new trial to be filed after the end of the term at which the case was tried and the verdict rendered. If it cannot be filed then, and thus without defendant's fault, the circumstances preclude its being sooner filed, shall defendant lose his statutory right to appellate review? This in the last analysis is the concrete question confronting us. The statute reads thus:

"Sec. 5285. The motion for a new trial shall be. in writing, and must set forth the grounds or causes therefor, · and be filed before judgment and within four days after the return of the verdict or finding of the court, *if the term shall so long continue; and if not, then before the end of the term,* and shall be heard and determined in the same manner as motions for new trials in civil cases."

The part of this section which we have italicized was added in 1909. [Laws 1909, p. 461.] Prior to the amending of this section and on July 13, 1907, this court had decided the case of State v. Brown, 206 Mo. 501, wherein the facts were that defendant Brown was found guilty in the criminal court of Buchanan county of murder in the first degree and his punishment fixed at death.    The regular judge being disqualified, a special judge sat to try the case.    The verdict in the case came in late one night—between nine and ten o'clock—and on the following morning the regular judge took the bench and upon being erroneously informed that defendant did not desire to take steps toward an appeal, adjourned the court till court in course.    At the next regular term of the Buchanan Criminal Court, which convened seven days after the coming in of the verdict of guilty, defendant filed his motion for a new trial and thereafter proceeded duly to appeal to this court.    It was held: (1) that the court below had no power to consider or pass on defendant's motion for a new trial, since it was filed out of time; (2) but that defendant nevertheless had the right to have the rulings of the trial court reviewed here on appeal; (3) and that defendant could not be deprived of his right to the solemn opinion of this court thereon, no laches being shown upon his, or upon his counsel's, part.

Whether the ruling in the Brown case furnished the reason for the amendment of 1909 noted above, we need not inquire.    If it did, it yet in nowise served

to change the general rule. For it is ruled in the Brown case that the motion for a new trial was untimely filed and therefore the circuit judge had no right in law to consider such motion for any purpose. So far then as the general principle involved is concerned the law to-day is the same as it was when the Brown case was ruled. This is so, because the amendment of 1909 above noted simply served to limit expressly the time of filing a motion for a new trial to the term at which the trial was had. Prior to that "an absurd law incapable of being intelligibly enforced" (Bingham v. Birmingham, 103 Mo. 1. c. 352) had in practice (except in rare cases) served so to limit it. This for the reason that even if defendant could have taken the full time of four days in vacation after adjournment to file his motion, such filing was ordinarily impossible in practice (barring the exception referred to above, where one term runs into another); because such motion must be filed in term time and not in vacation, for in vacation no one is sitting who is authorized to make orders touching such motion. That the instant case happens to fall among the exceptions detracts but little if at all from the force of the argument; since we must write the law for the whole State and not alone for the two or three cities wherein only is the condition possible which arises from this exception. So, the amendment of 1909 in nowise added strength in the ordinary case to the procedural inhibition already existing, against filing a motion for a new trial in vacation after the lapse of the term.

In the Brown case, as here in the instant case, the merits of the motion for a new trial seem to have been considered by the trial court. Notwithstanding this, we refused to consider them in that case, since such consideration was without warrant of law, then as now, and on this point, and most appositely upon another, the learned judge who wrote the opinion of the court in that case, said at page 507:

"It is true that the trial judge heard and considered the motion for new trial just as if it had been duly filed, and then overruled it, which he had no power to do, the motion not having been filed in term time. Nevertheless, the defendant had the right to have the ruling of the trial court reviewed on this appeal, which, for the reasons indicated, cannot be done. Defendant cannot be deprived of his right to the solemn opinion of this court, after a full and careful consideration of all that may be said against the justness of the verdict, and it would be a reflection on the criminal jurisprudence of this country to affirm this judgment without first considering the defendant's motion, no laches being shown upon his or his counsel's part.

"Therefore, in view of the enormity of the crime of which the defendant was found guilty, and the fearful consequence which must follow his conviction if suffered to stand, regardless of the evidence or of the facts (upon which we form or express no opinion), and in order that the defendant may not suffer any possible injustice, but be permitted to avail himself of every right which the law allows him, we reverse the judgment and remand the cause for further trial."

II. Moreover, the Constitution guarantees to defendant that he shall not be deprived of his property, or his liberty, or his life without due process of law. [Sec. 30, art. 2, Constitution 1875.] If he had no opportunity to file a motion for a new trial, as we must concede he did not have, but notwithstanding this his life be taken, it will have been taken without due process of law. For while the right of appeal is not essential to due process of law (Reetz v. Michigan, 188 U. S. 1. c. 508), yet if an appeal be allowed to some persons and not to all persons similarly situated, such deprivation of the right to an appeal is equivalent to the denial of due process of law, for due-

process of law and the equal protection of the laws are secured only when "the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government." [Duncan v. Missouri, 152 U. S. l. c. 382.]

*Arguendo,* but persuasive in this view for another reason, is the fact that just twenty-one days before the jury rendered this midnight verdict there was passed with an emergency clause an act designed to prevent in the trial of criminal cases the identical legal snarl now here confronting us. [Laws 1913, pp. 217 and 218.] Conceding that if this act be constitutionally valid (touching which we do not decide), yet if under the facts here by reason of the requirements that the causes to which it applied should be *"pending trial;"* that *"the trial thereof shall be in actual progress,"* and of others which the curious will note upon examination, it does not apply to, or aid the case as here made; nevertheless it would have applied, if the learned trial court had seen fit to follow its provisions at the usual hour of adjournment on Saturday afternoon, instead of proceeding with the trial to a conclusion and till the midnight hour. If this act does not offend the Constitution, a following of the letter or even the spirit of its provisions would have served to save the defendant from the serious predicament in which he now stands. The failure to order the sitting and rising of the court upon the trial of this case in accordance with this statute, and the lapsing of the term by statutory limitation in fifteen minutes after the coming in of the verdict have served to deprive the defendant of the opportunity to have our opinion upon the merits of the case upon the question of whether he had a fair trial.

For the errors of the court in failing so to control its sittings and adjournment as to afford defendant a like opportunity with others similarly situ-

265Mo.27

ated to have his appeal and to take the opinion of this court upon the question of the fairness of his conviction, a new trial ought to be awarded to him. Surely it is better that justice travel with leaden foot, rather than that she should walk rough-shod over the constitutional rights of citizens to be equal one with another before the law.

While the record is physically before us, yet by reason of the matters set out above it is not before us in such wise as will allow us to review it. And this condition arose as we see it without defendant's fault. So, while we may not pass upon what the bill of exceptions contains, as the case must be retried we suggest that upon the next trial the testimony of the witness May, as to alleged statements of some unknown person to another not satisfactorily identified as the defendant, about an unknown subject-matter, ought not to be offered. There was not, in short, any sufficient identification either of the persons speaking, or of the matter about which they were speaking, even if the whole conversation heard by May was not, as seems highly probable, res inter alios acta and wholly inadmissible against defendant. [State v. Newcomb, 220 Mo. 54.] Neither in our view was sufficient time given defendant to prepare for trial, the enormity of the charge considered. A slight expense to Jackson county (and this was the excuse largely urged) ought not to be weighed in the scales against a man's life. Likewise, the able and zealous representatives of the State who prosecute her pleas in this behalf, ought to be made to stay within the record in their arguments. Rarely have we read such able and eloquent arguments as were made in this case; but also rarely, if ever, have we read arguments which in inflammatory eloquence travelled so far afield from the facts in the case. Once upon the trial we note the learned judge nisi threatened that unless counsel refrained from acts which

failed to fully meet his approval and his ideas of court decorum, he would adjourn court. Such a course we would consider supererogatory so long as we do not entirely nibble away by construction the efficacious provisions of sections 3881, 3882 and 3883, Revised Statutes 1909.

We conclude therefore that while the present development of the English language is inadequate to express the unspeakable bestiality of defendant's conduct as the prosecuting witness details it (for if she speaks truth, he could well have been a teacher of indecency to the brutish lechers of Sodom and Gomorroh), yet if he be as guilty as she says he is, so much the more does he deserve a fair trial, lest the whip and scorn of our abhorrence shall drive us to mob him under the guise and empty shell of justice. If he had been fairly tried we do not think that even under the proof of his abandoned beastliness the jury would, upon the partly uncorroborated word of a self-confessed adulteress have assessed against him, as they did, the extreme penalty of the law. For brutish bestiality is not a capital crime; sodomy is not capital; rape only of the acts proved is capital, and right-minded men and women have always and ordinarily will always justly weigh the degree of culpability in the scale of the victim's chastity, regardless of the harsh rule of necessity which forbids us in law to draw any distinction between acts of rape on account of the victim's lack of prior chastity. So we think the extreme penalty here assessed can be rationally accounted for only upon the view that the things we mention (and which we would characterize as the very gravest errors, if we could but reach them for review) largely contributed to it. To say that he is guilty and therefore it makes no difference how he was tried, begs the question, and is but an argument favoring the return to primitive justice, which first hangs and then investigates. If the lat-

ter method had met the demands of civilization (even though it be charged and this case and these disjointed times partly prove that civilization is but skin-deep), it is probable that it would not have been abandoned for the present system, which among its necessary constituents requires a judiciary sworn to follow the law and the Constitution.

Being mindful of this duty and being thoroughly convinced that to take the life of this man, upon this conviction, the condition of this record considered, would be to judicially mob him under the mere empty form of law, we reverse and remand the case for a new and a fair trial. All concur.